UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTEA WYNN,

                              Plaintiff,

                                                        <u>DECISION AND ORDER</u>

                                                        08-CV-6342L

                    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final

determination of the Commissioner of Social Security ("the Commissioner") that Mattea Wynn

("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled

to a period of disability and disability insurance benefits.  The parties have both filed motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkts. #4, #6, #10).

For the reasons discussed below, the Commissioner's motion is granted, the plaintiff's

motion is denied, and the Commissioner's determination is affirmed.


## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on

October 6, 2005, claiming disability since December 10, 2004 on the basis of wrist, shoulder, elbow

and neck problems, diabetes and high blood pressure. The application was denied. (T. 11, 55-58, 82). Plaintiff requested a hearing, which was held on February 25, 2008 before administrative law judge ("ALJ") John P. Costello. On March 27, 2008, ALJ Costello issued a determination that plaintiff was not disabled. (T. 11-22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 16, 2008. (T. 4-7).

Record evidence of plaintiff's medical history includes the following. On December 3, 2004, while employed as an inspector for an automotive parts manufacturer, plaintiff began reporting to her employer's medical unit for complaints of pain in her left forearm. (T. 214). Shortly thereafter, she was diagnosed with left trapezius muscle fatigue and spasm, and right hand tendinitis. (T. 214).

On December 10, 2004, plaintiff stopped working and was seen by her treating orthopedist, Dr. Matthew Tomaino, who noted that plaintiff had a "long-standing shoulder injury, then the subject of a Workmen's Compensation claim. Dr. Tomaino diagnosed bursitis (irritation or inflammation of the bursa, causing pain and/or undue friction in the shoulder joint upon movement), gave plaintiff an unspecified injection and recommended physical therapy. He noted that plaintiff nonetheless retained "good strength and [range of] motion." (T. 248). On February 14, 2005, Dr. Tomaino noted that plaintiff had a weight-lifting restriction of five pounds. (T. 246, 315, 411).

On March 23, 2005, Dr. Tomaino performed surgery on plaintiff's left wrist for de Quervain's tendinitis (inflammation of tendons in the wrist). (T. 227-229). At a follow-up visit on March 30, 2005, Dr. Tomaino found that plaintiff had recovered full flexion of the wrist and had good neurovascular status, but that plaintiff's range of motion needed to improve. On March 30,

2005, and during a follow-up visit on April 8, 2005, Dr. Tomaino stated that plaintiff should be kept on "total disability" for the time being. (T. 244, 245).

On April 29, 2005, Dr. Tomaino found that plaintiff was "doing fairly well," and opted for Worker's Compensation purposes to "drop[ plaintiff] down to a partial disability of sedentary duty only. This is a marked disability until May 26th, when she will [undergo surgery on her right wrist and] then again return to total disability . . . probably until September 1st." (T. 242).

On May 26, 2005, plaintiff underwent a right wrist arthroscopy (minimally invasive surgery), joint debridement (removal of redundant cartilage and/or inflamed tissue), and partial synovectomy (removal or some or all of a joint's synovial membrane). (T. 226, 230-231). At a follow-up visit on June, 8, 2005, Dr. Tomaino found that plaintiff was recovering from the surgery well. (T. 240).

On July 14, 2005, plaintiff had surgery on her right elbow and wrist for tennis elbow, tendinitis, and basal joint arthritis. (T. 222-225).

On August 8, 2005, plaintiff was seen by Dr. Tomaino, and requested to return to work in order to qualify for a pension. Dr. Tomaino noted that although plaintiff was "[d]oing okay at this early juncture," it was too soon to know whether plaintiff would be able to return to work without restrictions. (T. 238).

On September 19, 2005, Dr. Tomaino opined that plaintiff was partially disabled, but might be able to perform sedentary work with no repetitive motions. (T. 237).

During a follow-up visit on October 31, 2005, Dr. Tomaino stated that he planned to "keep[ plaintiff] out on total disability. It is my opinion that when she reaches maximal medical improvement, she will be unable to return to her [present job] and should consider availing herself

of the resources of [the New York Office of Vocational and Educational Services for Individuals with Disabilities ('VESID')] for vocational rehabilitation." (T. 236, 300).

On November 23, 2005, plaintiff was examined by osteopathic physician James Naughton. She reported that she shopped and cooked three times per week, did daily house cleaning, personal care, went for walks, gardened and socialized with friends. (T. 328). Dr. Naughton diagnosed left-side tenosynovitis, right side de Quervain's Syndrome, right basal joint, right ganglion and left shoulder pain, all status post surgical repair. (T. 329). He opined that plaintiff had no limitations with respect to sitting, walking or climbing stairs. Plaintiff was moderately limited in pushing, pulling, reaching and handling objects, and could intermittently lift a mild degree of weight. *Id*.

On December 1, 2005, plaintiff was seen by Dr. Tomaino. He opined that plaintiff was approaching maximum medical improvement, and was now a candidate for VESID. Dr. Tomaino specified that plaintiff could perform sedentary work with no repetitive motion. (T. 346-348, 366, 373, 403).

On April 2, 2006, in connection with plaintiff's Worker's Compensation proceeding, Dr. Tomaino rated plaintiff as having no loss of use of the right elbow and shoulder, but 30% loss of use of the right hand and 35% loss of use of the right thumb. He also found that plaintiff had 25% loss of use of the left arm and 10% loss of use of the left thumb. (T. 345).

On May 8, 2006, plaintiff returned to work at her previous employer, but continued to complain of pain in her left shoulder. (T. 353-355).

Examining psychologist Dr. Michael Kuttner performed an in-person mental status examination of plaintiff on August 23, 2006. (T. 389-390). He found that plaintiff was mildly

anxious and depressed, but that her thoughts were logical, organized and productive with no evidence of psychosis or compromised judgment and insight. He also noted that plaintiff was more "somatically preoccupied" than other chronic pain patients, meaning that she perceived the severity of her symptoms, including pain, as too high. Plaintiff described her pain as interfering with much of her life, in a manner which Dr. Kuttner believed underestimated her ability to cope with and manage the pain, or participate in rehabilitation efforts. (T. 390). He opined that plaintiff could benefit from behavioral pain management training and therapy, and assessed plaintiff as having a pain disorder, and overuse syndrome. (T. 390).

In or about October 2006, plaintiff went on temporary leave from her job until November 20, 2006 when she could retire. (Tr. 355). She enrolled at Monroe Community College, with the initial goal of obtaining an associate degree. (T. 391-392, 394, 440, 475).

On July 20, 2007, plaintiff was seen by orthopedist Dr. Gregory Finkbeiner for right knee pain. Dr. Finkbeiner diagnosed plaintiff with a medial and lateral meniscal tear (torn knee cartilage). (T. 424). A magnetic resonance imagine ("MRI") test of plaintiff's right knee was performed on July 25, 2007. The MRI showed medial compartment arthritis with some thinning of the cartilage, mild chondromalacia (knee pain due to irritation of the cartilage), a horizontal tear along the undersurface of the medial meniscus, and minimal joint fluid. (T. 422). Dr. Finkbeiner concluded that the MRI results were consistent with a meniscal tear, and discussed the possibility of performing a partial remedial meniscectomy (surgical removal of a portion of the torn meniscus). (T. 420).

On February 22, 2008, Dr. Bruce Hira, plaintiff's family practitioner, submitted reports describing plaintiff's RFC. Dr. Hira stated that he has treated plaintiff since June 17, 1996 for

diabetes, hypertension, knee pain, carpal tunnel syndrome, hyperlipidemia (high cholesterol and/or elevated levels of other lipids in the blood), tennis elbow, right hand and shoulder pain, and cervical radiculopathy (nerve dysfunction). (T. 434). Dr. Hira opined that plaintiff could occasionally lift less than ten pounds, stand or walk for less than two hours in an eight-hour workday, sit for less than six hours, and had limited pushing and pulling ability in her upper extremities. (T. 425-426). Plaintiff could occasionally climb, crawl, stoop and engage in other postural activities, and was limited to occasional performance of all manipulative functions, such as reaching, feeling, handling and fingering. (T. 426-427). Dr. Hira also listed limitations with respect to temperature extremes, dust, humidity, and other environmental factors, due to allergies. (T. 428).

With respect to mental functioning, Dr. Hira assessed plaintiff as moderately limited in her ability to understand and remember short, simple instructions as well as detailed instructions. (T. 429).

At her hearing on February 25, 2008, plaintiff testified that since her surgeries, she continues to experience pain and swelling in the left hand, elbow and shoulder, radiating into her neck, as well as her right hand, wrist, elbow and knee. (T. 459-463). Plaintiff stated that her pain is distracting to her, and she believes it interferes with learning. (T. 464). Plaintiff's daily activities include taking care of personal hygiene, light cooking that does not involve lifting heavy objects or food items, driving, and watching television (T. 468-471).

Vocational expert ("VE") Jay Steinbrenner testified that plaintiff's former employment as an auto parts inspector was light and semi-skilled. (T. 478). The ALJ asked Steinbrenner whether jobs existed in the national economy for a person of plaintiff's age, education and work history, with

the residual functional capacity ("RFC") to perform sedentary work with a lifting limitation of ten pounds, only occasional postural activities and reaching, handling and fingering, avoidance of temperature extremes, vibrations and dust, and limited to work requiring the ability to understand only simple instructions. Steinbrenner testified that such an individual could not perform plaintiff's past work, but could perform the jobs of switchboard operator, telephone marketer, and telephone survey-taker. The latter job was unskilled, sedentary work with 40,227 jobs in the national economy, and 379 jobs in the region. (T. 481).

## DISCUSSION

### I.     Standard for Determining Disability

Under the Social Security Act ("the Act"), a person is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity.  *See* 20 CFR §404.1520(b).  If so, the claimant is not disabled.  If not, analysis proceeds to step two.

At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities.  20 CFR §404.1520(c).  If not, the analysis concludes with a finding of "not disabled."  If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4.  If the claimant's impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled.  If not, analysis proceeds to step four.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis notwithstanding limitations for the claimant's collective impairments.  *See* 20 CFR §404.1520(e), (f).  Then, the ALJ determines whether the claimant's RFC permits him to perform the requirements of his past relevant work.  If so, the claimant is not disabled.  If not, analysis proceeds to the fifth and final step.

The claimant bears the burden of proof throughout steps one through four.  However, at the fifth step, the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999), *quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).  *See* 20 CFR §404.1560(c).

## II.    Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774, *quoting  Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

## III.    The ALJ's Decision

Initially, the ALJ found at step one that the claimant had not engaged in substantial gainful activity since December 10, 2004, and that her subsequent return to work was an unsuccessful work attempt.  (T. 13).  The ALJ found at steps two and three that plaintiff had a severe impairment comprised of problems with her hands, elbows, right knee and right shoulder, but that these conditions did not meet or equal any listed impairment. *Id*.  The ALJ found at step four that plaintiff

lacked the residual functional capacity ("RFC") to perform her past relevant work, but retained the RFC to perform sedentary work, sitting a total of six hours and standing for a total of two hours, occasionally engaging in postural activities, occasionally reaching, handling and fingering, requiring the ability to understand, remember and follow only simple directions and affording the opportunity to change position every half hour. (T. 15). Based on testimony from the VE, the ALJ concluded at step five that plaintiff was not disabled because she could perform other jobs found in significant numbers within the national economy, including the positions of switchboard operator, telephone solicitor and telephone survey-taker. (T. 21).

The Commissioner argues that substantial evidence in the record exists to support the ALJ's decision that plaintiff is able to perform other work in the national economy. Plaintiff, on the other hand, argues that the ALJ's decision is based upon legal error. Plaintiff claims, *inter alia*, that the ALJ erred at step four when he rejected the opinion of plaintiff's treating physician, Dr. Hira, with respect to her exertional limitations, failed to fully develop the record, and failed to fully credit plaintiff's subjective complaints of pain. Upon review, I find that the ALJ's determination is supported by substantial evidence in the record.

Plaintiff primarily asserts that the ALJ failed to afford the requisite deference to the opinions of her treating physician, Dr. Hira. It is well-settled that the medical opinion of a claimant's treating physician is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial record evidence in [the] record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). *See also Johnson v. Astrue*, 2009 U.S. App. LEXIS 8942 at *2-*3 (2d Cir. 2009); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.

2000). In determining what weight to give a treating physician's opinion, the Commissioner must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. § 404.1527(d). Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal quotations omitted).

In rejecting Dr. Hira's opinion concerning plaintiff's restrictions, the ALJ found that plaintiff's medical records simply did not support a finding that plaintiff was limited to the extent described by Dr. Hira. Plaintiff's involvement in a VESID retraining program, including attending lengthy classes five days per week, suggested that she was capable of sitting and standing for longer than the two hours indicated by Dr. Hira, and there was no evidence elsewhere in the record, in the form of objective medical tests or similar objective criteria, to support the significant limitations he described. (T. 19, 20). Furthermore, in assessing plaintiff's RFC, the ALJ appropriately gave controlling weight to the opinions of Dr. Tomaino, plaintiff's treating orthopedic surgeon, whose findings were supported by MRI records and other objective assessments, such as range of motion and strength tests. (T. 20). Because Dr. Hira's assessments of plaintiff's sitting and standing capabilities are unsupported by any medical evidence of a related impairment, and conflict with the more substantially-supported opinion of Dr. Tomaino, I find that the ALJ properly rejected Dr. Hira's statements as unsupported and inconsistent with the record.

Plaintiff also contends that the ALJ failed to properly credit her subjective testimony concerning the extent of her limitations. In assessing a claimant's credibility, an ALJ must consider the objective medical evidence, as well as evidence concerning: (1) the plaintiff's daily activities; (2) the location, duration, frequency and intensity of the plaintiff's pain or other symptoms; (3) factors that precipitate or aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of plaintiff's medications; (5) other means of pain relief received by the plaintiff; (6) non-treatment measures used by plaintiff for pain relief; and (7) any other factors concerning the individual's functional limitations and restrictions. *See* 20 C.F.R. §§ 404.1529, 416.929.

At the hearing, plaintiff testified that she takes unspecified pain medications, and makes daily use of a TENS unit to control her pain. (T. 465-467). She is able to care for herself, including attending VESID training courses several days per week, and her other daily activities include driving, light household tasks with no heavy lifting such as cooking, and watching television. (T. 468-471). Based on these facts, I find that the ALJ properly concluded that while the plaintiff's medically determinable impairments likely cause her pain or discomfort at some level, plaintiff's references to utterly debilitating pain were likely exaggerated in light of the objective medical evidence.

Finally, plaintiff claims that the ALJ failed to fully develop the record, arguing that because the ALJ issued an unfavorable decision, he clearly "did not fully appreciate the Plaintiff's intellectual, academic or mental health limitations." (Dkt. #10, Plaintiff's Motion to dismiss, at 18). However, there is no indication that the plaintiff's medical records provided an incomplete description of her mental capabilities, or that the ALJ failed to obtain reports from all of plaintiff's

treating and examining physicians relative to the various components that comprise her severe impairment. Plaintiff's high school graduation, college enrollment, successful attendance at VESID training, and activities of daily living, as well as the opinions of her treating orthopedic surgeon and examining physicians that she is capable of sedentary work with the limitations previously described, support the ALJ's finding and do not indicate a need for a more developed record.

I have considered the remainder of plaintiff's claims, and find them to be without merit.


## CONCLUSION

Based on the foregoing, I find that the ALJ's finding that plaintiff is not disabled is supported by substantial evidence in the record. The Commissioner's motion for judgment on the pleadings (Dkt. #4) is granted, the final decision of the Commissioner is affirmed, and the complaint is dismissed. Plaintiff's cross motions for judgment on the pleadings (Dkt. #6, #10) are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
       May 8, 2009.